1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8
9
10
11
12
13
14

NORMA MAXWELL,

                          Plaintiff,

          v.

VIRTUAL EDUCATION
SOFTWARE, INC., a Nevada
corporation,

                          Defendant.

NO:  CV-09-173-RMP

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN
PART AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

15
16
17
18
19
20
21
22
23
24
25
26
27
28

     This matter comes before the Court on plaintiff Norma Maxwell's Motion for

Summary Judgment (Ct. Rec. 22) and defendant Virtual Education Software, Inc.'s

("VESi") Motion for Summary Judgment (Ct. Rec. 27).  Ms. Maxwell has asserted

claims of (1) gender and pregnancy discrimination under chapter 49.60 RCW, the

Washington Law Against Discrimination ("WLAD"), (2) wrongful termination in

violation of public policy, and (3) negligent and intentional infliction of emotional

distress (Ct. Rec. 2-2 at 14-16).  Ms. Maxwell moves for partial summary judgment

on her claims for violation of the WLAD and wrongful termination in violation of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 1

public policy (Ct. Rec. 22).  VESi moves for summary judgment dismissal of all of Ms. Maxwell's claims (Ct. Rec. 27).

## I.  FACTUAL BACKGROUND

VESi is a small educational software company incorporated in 1998 when it was a home-based operation.  Decl. of Robbie (Roberta) Jackson on May 17, 2010 (Ct. Rec. 32 at 1).  In 2002, VESi moved its operations to office space in Spokane, Washington.  Dep. of Robbie (Roberta) Jackson, Apr. 8, 2010 (Ct. Rec. 33-4 at 131); Dep. of Patrick Chung, (Ct. Rec. 25-6 at 46).  Three executives, Michael ("Mick") Jackson, Roberta ("Robbie") Jackson, and Patrick Chung, make the major decisions for VESi.  Dep. of Mick (Michael) Jackson, Apr. 7, 2010 (Ct. Rec. 33-5 at 15).  Mr. Jackson is President and CEO of VESi, Ms. Jackson, Mick's wife, is Vice President of Operations, and Mr. Chung is Vice President of Design & Development.  Mr. Chung lives in Portland, Oregon, and has always worked remotely from there.  Decl. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 28).  The parties dispute whether all three executives must agree to a major decision or whether there are instances where one executive may make a major decision unilaterally.  *Compare* (Ct. Rec. 29 at 2) *with* (Ct. Rec. 41 at 3).

Ms. Maxwell worked for VESi as a senior web designer from May 2006 until June 2008.  Decl. of Mick Jackson, Apr. 7, 2010.  Dep. of Mick Jackson, Apr. 7,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

2010 (Ct. Rec. 25-5 at 25); Dep. of Patrick Chung, Apr. 7, 2010, at 56 (Ct. Rec. 50-1 at 210).  The parties agree that Ms. Maxwell consistently performed well in her job as a web designer and met deadlines.  She received raises, bonuses, and positive performance evaluations each year during her employment at VESi.

At the time that Ms. Maxwell was hired by VESi, she already was the mother of one child, who was two-and-one-half years old.  Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 25-7 at 71).  The parties dispute whether at the start of Ms. Maxwell's employment with VESi that she was told by Mr. Jackson that she could have a flexible work schedule, in the form of working four hours in the office each day and four hours at home, following her 90 days of probationary employment.  *Compare* Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 42-3) *with* Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 27-28) (stating that he did not discuss Ms. Maxwell's schedule with her at the time he hired her).

Ms. Maxwell asserts that Mr. Jackson had agreed at the time that she was hired that she could work four hours from home and four hours at the office each day, after the probationary period during which she was required to work "as close to full-time as possible."  Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 42-3 at 67, 71-72).  Ms. Maxwell does not dispute that she did not work half-time at home and half-time in the office once her probationary period was over because her first child had

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

adapted well to day care.  Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 33-2 at 37); Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 42-3 at 71-72, 77).  Beginning in the probationary period, Ms. Maxwell worked two days per week from 7:30 a.m. until 2:00 p.m. in the office and 1.5 hours at home and three days per week from 8:00 a.m. until 4:30 p.m. in the office.  Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 42-3 at 76-77).  Ms. Maxwell asserts that at some point after her probationary period she began to work three days from 7:30 a.m. until 2:00 p.m. at the office, with 1.5 hours at home, and two days per week from 8:00 a.m. until 4:30 p.m. in the office. Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 42-3 at 95).  VESi, conversely, asserts that Ms. Maxwell's schedule did not change from the hours that she was working in the office during her probationary period until after her maternity leave (Ct. Rec. 37 at 5).

Ms. Maxwell learned she was pregnant in September 2007 and immediately shared the news with the office.  Sometime later, Mr. Jackson asked Ms. Maxwell to come to his office to talk about concerns that other employees had mentioned about her attitude changing for the worse since she became pregnant.   Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 30-32); Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 38-5 at 37).  Mr. Jackson told Ms. Maxwell that "most pregnant women seemed to be glowing and that she just seemed unhappy."  Dep. of Mick

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 4

Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 31).  Mr. Jackson also suggested that Ms.

Maxwell talk to a physician, who "might be interested in upping her medication."

Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 32).  Ms. Maxwell does not

dispute that she took anti-depressant medication for approximately 12 years before

her pregnancy, adjusted the dosage of the medication during her pregnancy, and saw

a counselor for "depression and marriage difficulties" in her first trimester.  Dep. of

Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 38-5 at 34-35, 38-39).

Mr. Jackson later characterized the conversation as one in which he conveyed

the concern that he, Ms. Jackson, and other employees felt about Ms. Maxwell's

condition.  Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 30-31).  By contrast,

Ms. Maxwell characterized the conversation as one that felt disciplinary in nature

and patronizing in tone.  Dep. of Norma Jackson, Apr. 6, 2010 (Ct. Rec. 42-3 at 117-

18).

> [I]t wasn't addressed to me as concern. It was addressed to me as you
> need to get your negative attitude under control or you need to decide
> whether or not VESi is a place you want to be. His tone with me when I
> initially entered his office was like somebody talking to a teenager who
> had just made a terrible decision . . . . He wasn't talking to a grown
> woman. . . . He wasn't giving me the benefit of the doubt.  He came off
> trying to be intimidating, trying to be a bully.  And this is why I felt
> angry.  And then of course he backed down, once he allowed me to
> express myself and express my point of view, he became more
> reasonable.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 5

Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 38-5 at 34-35, 38-39).

Mr. Jackson and Ms. Maxwell also had a conversation early in her pregnancy in which he informed her that her apparel that day was inappropriate for the office; Mr. Jackson described the clothing to which he objected as "sweat pants" while Ms. Maxwell recalled that she was wearing "black pants that had stretch to them." Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 34); Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 42-3 at 110-11, 113).   Mr. Jackson spoke with Ms. Maxwell because Ms. Jackson had informed him that Ms. Maxwell had worn what Ms. Jackson considered sweat pants for a full week soon after she announced her pregnancy and that Ms. Jackson "didn't think it was okay for her to wear sweats for her entire pregnancy."  Dep. of Robbie Jackson, Apr. 8, 2010 (Ct. Rec. 42-4 at 148).

During her deposition, Ms. Jackson gave three other examples of people to whom she spoke regarding office-inappropriate clothing.  Dep. of Robbie Jackson, Apr. 8, 2010 (Ct. Rec. 33-4 at 148-49).  For example, Ms. Jackson told a male employee he should not wear a shirt with a depiction of a naked woman on it.  Dep. of Robbie Jackson (Ct. Rec. 33-4 at 148-49).  Ms. Jackson also told Mr. Chung on one of his occasional visits to the office that the sweat shorts that he was wearing one day were too casual and told another male employee that his shorts and t-shirt were unacceptable in the office because they resembled exercise attire.  Dep. of Robbie

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

Jackson, Apr. 8, 2010 (Ct. Rec. 33-4 at 149).

VESi also provides a copy of the company's employee manual, which informs employees that "when your supervisor feels that your dress or grooming is inappropriate, he or she will discuss it with you privately.  At your supervisor's option, you will be asked to return home to change, without pay" (Ct. Rec. 33 at 97).  However, it is unclear whether Ms. Maxwell was aware of that policy.[1]

The parties agree that, following the conversation between Mr. Jackson and Ms. Maxwell about her clothing, there were no further issues with Ms. Maxwell's appearance at work.  Dep. of Robbie Jackson, Apr. 8, 2010 (Ct. Rec. 42-4 at 148).

Ms. Maxwell continued to experience nausea and occasional vomiting throughout her pregnancy.  Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 42-3 at 88).  Ms. Jackson recalled that, at least in one conversation, she encouraged Ms. Maxwell to work at home more during her pregnancy.  Dep. of Robbie Jackson, Apr.

---

[1]  Although VESi provides an acknowledgement of receipt of, and agreement to, the employee manual "as of 5/15/02" with Norma Maxwell's signature, dated May 17, 2006, the employee manual that VESi submitted in support of its summary judgment motion indicates that it is the manual as updated on September 3, 2008 (Ct. Rec. 33-3 at 95).   Therefore, the record is unclear regarding which employment policies Ms. Maxwell agreed to with that signature.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 7

8, 2010 (Ct. Rec. 33-4 at 143-44).  Ms. Jackson asserts that Ms. Maxwell declined the offer to work more at home, stating that she had a difficult time working with her young son making demands on her attention.  Dep. of Robbie Jackson, Apr. 8, 2010 (Ct. Rec. 33-4 at 143-44); *see also* Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 37).

At one point Ms. Maxwell did request greater flexibility in her schedule so that she could rest when nauseated and work once the nausea had passed.  Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 29); Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 25-7 at 78-79).  Mr. Jackson first asked Ms. Maxwell to put her request to work from home when nauseated in writing, and he later denied her written request. Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 29); Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 25-7 at 78-79).    She continued to work the same schedule from home that she had previously worked with her flexible schedule.  Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 25-7 at 80).

Ms. Maxwell took paid time off ("PTO") when she felt unable to work during her pregnancy.  Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 25-7 at 83-84).  It is uncontested that VESi allowed employees to work at home to care for sick children on a short-term basis without taking PTO.  Dep. of Robbie Jackson (Ct. Rec. 25-4 at 18).  It is unclear in the record whether Ms. Maxwell worked from home beyond her

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

pre-established schedule without taking PTO.

Ms. Maxwell delivered her second child by Caesarean section in May 2008. Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 25-7 at 88).  During her maternity leave, Ms. Maxwell and VESi agreed that she would extend her maternity leave to four weeks rather than three.  Dep. of Norma Maxwell, Apr. 6, 2010 (Ct. Rec. 25-7 at 88).  After four weeks, Ms. Maxwell returned to work two 20-hour weeks before returning to full-time work.

At some point during Ms. Maxwell's maternity leave or during her two weeks of part-time work immediately following maternity leave, she and Mr. Chung discussed her new full-time schedule as being approximately 7:00 a.m. until 2:00 p.m. in the office each day.  *See* (Ct. Rec. 33-3 at 113).  Ms. Maxwell asked for permission to work four hours in the office and four hours at home each day instead (Ct. Rec. 33-3 at 113-14).  At first, Mr. Chung expressed that he was amenable to that schedule.  Dep. of Patrick Chung, Apr. 7, 2010 (Ct. Rec. 25-6 at 56).  Mr. Jackson stated that he was neutral regarding the schedule.  Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 36).  However, Ms. Jackson was opposed to the schedule and persuaded Mr. Jackson and Mr. Chung to reject it.  Dep. of Robbie Jackson, Apr. 8, 2010 (Ct. Rec. 33-4 at 146); Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 25-5 at 37).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

Mr. Chung recalled Ms. Jackson's saying that "[a]s a mother, no way she can put in that four hours of time that we ask for."  Dep. of Patrick Chung, Apr. 7, 2010 (Ct. Rec. 25-6 at 55).  Ms. Maxwell and Mr. Chung engaged in a lengthy email exchange regarding the reasons that Ms. Maxwell wanted the schedule and VESi's reasons for denying the schedule (Ct. Rec. 33-3 at 113-129).  A separate email exchange ensued between Mr. Jackson and Mr. Chung regarding Ms. Maxwell's work schedule request.

In a message on May 29, 2008, Mr. Jackson wrote,

> I have concerns that Norma will not actually put in four hours at home with an infant and a toddler to care for in the mornings and evenings.  I would actually be surprised, having seen Robbie with two small ones, if she could realistically put in even half that time at home . . . .  This is less a Norma issue and more a new mother issue. . . ."

(Ct. Rec. 25-2 at 8).

Mr. Chung conveyed this reasoning to Ms. Maxwell on June 2, 2008, writing "[Mr. Jackson] basically said to me that he would not support you working at home because of your condition, ie [sic] you are [sic] two kids to take are [sic] of"  (Ct. Rec. 25-1 at 5).  Ultimately, Ms. Maxwell's work schedule upon returning to work full-time was 35 hours per week in the office and 5 hours per week at home, from 7:00 a.m. until 2:30 p.m. (Ct. Rec. 25-9 at 93); Dep. of Patrick Chung, Apr. 7, 2010

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

(Ct. Rec. 25-6 at 60).

Mr. Jackson asserts that Ms. Maxwell did not respond to his emails in the week she returned from maternity leave, the first of two weeks that she worked part-time, however Mr. Jackson no longer has copies of any of the e-mails he asserts that he sent to Ms. Maxwell.  Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 42-2 at 189). Mr. Jackson recalled that Ms. Maxwell, prior to maternity leave, responded within a few minutes to his emails.  Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 42-2 at 190).  Mr. Jackson maintains that he spoke with Ms. Maxwell about her lack of prompt email responses the Monday of her second week of part-time work, and that Ms. Maxwell told him that she never got his emails.  Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 42-2 at 191).  He then recalls that he sent her a test message, to which she responded "got it," and there was no longer any response problem after that. Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 42-2 at 191).

At some point after Ms. Maxwell returned to work from maternity leave, Mr. Chung received a complaint about her "bad attitude" from co-workers, Jeanette Nash and Kristen Todd (Ct. Rec. 25-6 at 61).  On June 16, 2008, Ms. Maxwell's first day back full-time, Ms. Maxwell and another employee, Satin McCreary, did not answer phones when the two employees, Ms. Nash and Ms.Todd, who normally answer phones could not.  *See* (Ct. Rec. 42-6 at 165-66).  Ms. Nash and Ms. Todd

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

complained to Mr. Chung, who inquired of Ms. Maxwell as to why she had not answered the phones. *Id.* However, Ms. Maxwell maintained that both she and Ms. McCarty were reviewing certain audio files related to course development for VESi and could not hear the phones. *Id.* Mr. Chung recalls that no disciplinary action was taken regarding the phone incident with either Ms. Maxwell or Ms. McCreary. Dep. of Patrick Chung, Apr. 7, 2010 (Ct. Rec. 25-6 at 59-60). There are no allegations that any additional issues with answering the telephone occurred after that singular incident.

Mr. Chung maintains that upon starting her full-time schedule after maternity leave, Ms. Maxwell called him at 7:00 a.m. more than once to complain about Mr. Jackson's rejection of her proposed schedule. Dep. of Patrick Chung, Apr. 7, 2010 (Ct. Rec. 25-6 at 58, 69). He also wrote in an email to Ms. Maxwell on June 18, 2008, within one to two days of firing her that: "I am glad you are feeling better about the situation. Tomorrow is a new day, remember to be polite and pleasant to everyone in the office. These two tangibles can go a long way. We all have bad day [sic] and some time is the perception … [sic]" (Ct. Rec. 33-3 at 127).

Ms. Maxwell responded that same day:

Patrick,
As far as I am aware, I am always polite and pleasant to everyone in the office. If someone has had a different perception, they have not addressed it with me. I am more than happy to reassure anyone and/or address any misunderstanding, if I am simply asked about it. Otherwise,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

there is really nothing I can do about a perception I am unaware
someone is having.  I am confused as to why you would tell me to
remember to be polite and pleasant.
Norma Maxwell

(Ct. Rec. 33-3 at 127).

Ms. Maxwell worked approximately two days full-time, after her two weeks of

post-maternity leave part-time work, before Mr. Chung fired her.  Mr. Chung asserts

that he terminated Ms. Maxwell's employment on the basis of "her combative

attitude" and Mr. Chung's perception that "[s]he kept dwelling with the issues about

her work schedule that she couldn't have, because [VESi] denied her request."  Dep.

of Patrick Chung, Apr. 7, 2010 (Ct. Rec. 25-6 at 62).  However, Mr. Chung provided

a positive recommendation for Ms. Maxwell following her termination.  Dep. of

Patrick Chung, Apr. 7, 2010 (Ct. Rec. 25-6 at 62).

VESi claims that at first a woman was hired to replace Ms. Maxwell, but that

she did not work out (Ct. Rec. 37 at 14).  However, VESi responded to Plaintiff's

interrogatory with an explanation that VESi hired a man, Cameron Hatch, to replace

Ms. Maxwell in September 2008 (Ct. Rec. 42-5 at 161).

## II.  ANALYSIS

As a preliminary matter, the parties agree that Ms. Maxwell's claim for

wrongful discharge in violation of public policy, which Plaintiff pleaded in the

alternative to the Washington Law Against Discrimination ("WLAD") claim, should

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 13

be dismissed because the Defendants acknowledge in their briefing on these motions that they have more than eight employees and are subject to the WLAD. Defendant's Memorandum Opposing Plaintiff's Partial Summary Judgment Motion (Ct. Rec. 36 at 16); Plaintiff's Reply Memorandum on Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 53) (renewing Plaintiff's arguments for summary judgment only on the WLAD claim); RCW 49.60.040(11) (limiting claims under WLAD to employers with more than eight employees).

Therefore, the Court dismisses with prejudice Plaintiff's claim for wrongful discharge in violation of public policy. The remaining issues before the Court are whether Plaintiff should be granted summary judgment on her WLAD claims of gender and pregnancy discrimination claims or whether Defendants should be granted summary judgment on Plaintiff's WLAD claims or Plaintiff's negligent and intentional infliction of emotional distress claims.

**_A.  Summary Judgment Standard_**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

*Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U .S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325.  The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party.  If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631.  The evidence presented by both the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 15

moving and non-moving parties must be admissible.  Fed. R. Civ. P. 56(e).

Furthermore, the court will not presume missing facts, and non-specific facts in

affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

　　　　This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  As such, the Court

will apply Washington state substantive law.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78,

58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## *B.  Gender and Pregnancy Discrimination Claim*

　　　　The Washington Law against Discrimination (WLAD) prohibits an employer

from terminating a person's employment on the basis of his or her sex.  RCW

49.60.180(2).  The provisions of chapter 49.60 RCW "shall be construed liberally for

the accomplishment of the purposes thereof."  RCW 49.60.020.  The Washington

State Human Rights Commission ("WHRC") is charged with interpreting and

enforcing the WLAD.  RCW 49.60.020, .120.  Courts give great weight to the

regulations issued by the WHRC so long as they do not conflict with the legislative

intent underlying the WLAD.  RCW 49.60.010, et seq.; *Hegwine v. Longview Fibre*

*Co., Inc.*, 162 Wn.2d 340, 349, 172 P.3d 688 (Wash. 2007).

　　　　Sex discrimination includes imposing different terms and conditions of

employment on a woman or terminating a woman's employment because of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 16

pregnancy or childbirth.  Wash. Admin. Code 162-30-020[2]; *see also Hegwine*, 162

Wn.2d 340 at 349 ("[W]e hold that under the plain language of the WLAD and its

interpretive regulations, pregnancy related employment discrimination claims are

matters of sex discrimination.").  Adverse employment actions may encompass

termination and any other action that materially alters the "terms and conditions" of a

person's employment.  *See, e.g.*, *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 819 (9th

Cir.2002).

Although not binding authority, cases interpreting Title VII, § 703 of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), are instructive in construing chapter

49.60 RCW of the WLAD.  *See Valdez-Zontek v. Eastmont School Dist.*, 154 Wn.

App. 147, 175, 225 P.3d 339 (2010); *Glasgow v. Georgia-Pacific Corp.*, 103

Wash.2d 401, 406 n. 2, 693 P.2d 708 (1985).  An employee alleging gender or

pregnancy discrimination must make a prima facie showing of discrimination to

proceed to trial, either by meeting the four-part test laid out in *McDonnell Douglas*

---

[2] Wash. Admin. Code 162-30-020 (deals with discrimination as to "[p]regnancy,

childbirth, and pregnancy related conditions" and explains that a pregnancy related

medical condition is to be treated as a matter of sex discrimination).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 17

*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[3], or by

providing direct evidence suggesting that the employment decision was based on an

impermissible criterion, *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th

Cir. 1997).  Gender stereotyping is direct evidence of sex discrimination.  *Price*

*Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775 (1989).

A plaintiff makes a prima facie sex discrimination case under WLAD by

showing that she or he: "(1) is a member of a protected class; (2) was discharged; (3)

was doing satisfactory work; and (4) was replaced by a person of the opposite sex or

otherwise outside the protected group." *Domingo v. Boeing Employees' Credit*

*Union*, 124 Wn. App. 71, 79, 98 P.3d 1222 (2004) (citing *Kuest v. Regent Assisted*

*Living, Inc.*, 111 Wash.App. 36, 43-44, 43 P.3d 23 (2002), *review denied*, 149

Wash.2d 1023, 72 P.3d 762 (2003)).  "In any sex discrimination action based on

disparate treatment, the plaintiff must demonstrate that she or he was treated

differently than persons of the opposite sex who are otherwise similarly situated."

---

[3] The plaintiff must show that (1) she belongs to a protected class; (2) she was

qualified for the position; (3) she was subject to an adverse employment action;

and (4) similarly situated individuals outside of the protected class were treated

more favorably.  *Chuang v. Univ. of Cal. Davis Bd. of Trustees*, 225 F.3d 1115,

1123 (9th Cir. 2000).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 18

1    *Marquis v. City of Spokane*, 130 Wn.2d 97, 113, 922 P.2d 43 (1996).

2          If an employee can make a prima facie showing of discrimination, the burden

3    shifts to the employer to show a legitimate, nondiscriminatory reason for its conduct.

4    *Hill*, 144 Wash.2d at 180-82, 23 P.3d 440; *see also Domingo v. Boeing Employees*

5    *Credit Union*, 124 Wn. App. 71, 98 P.3d 1222 (2004) (courts addressing employment

6    discrimination under WLAD use the burden shifting analysis established in

7    *McDonnell Douglas Corp.*, 411 U.S. 792).  If the employer meets their burden, then

8    the burden shifts to the plaintiff to prove that the employer's reason was mere pretext.

9    *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn.App. 212, 227 (1996).  To defeat

10   summary judgment, the plaintiff must support that a genuine issue of material fact

11   exists as to whether the employer's explanation is worthy of belief.  *Domingo v.*

12   *Boeing Employees' Credit Union*, 124 Wash.App. 71, 88, 98 P.3d 1222 (2004).

13         Once a prima facie case has been made, "[t]he burden of production, but not

14   persuasion, then shifts to the employer to articulate some legitimate,

15   nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis*,

16   225 F.3d 1115, 1123-24 (9th Cir.2000)  If the employer does so, the plaintiff must

17   then show that the articulated reason is pretextual "either directly by persuading the

18   [fact-finder] that a discriminatory reason more likely motivated the employer or

19   indirectly by showing that the employer's proffered explanation is unworthy of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 19

credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

When the evidence is direct, "'[w]e require very little evidence to survive summary judgment' in a discrimination case." *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1564 (9th Cir.1994) (quoting *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir.1991)). "But when the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir.2005) (quoting *Godwin v. Hunt Wesson, Inc.*, 15- F.3d 1217, 1221 (9th Cir. 1998)).

Ms. Maxwell contends that she presents direct evidence of VESi's discriminatory animus. For example, Ms. Maxwell relies on Mr. Jackson's alleged statement that it was "less a Norma issue and more a new mother issue . . . " (Ct. Rec. 25-2 at 8). Ms. Maxwell argues that VESi's proffered reason for her termination, her "negative attitude," is actually a reaction to "VESi's stereotypic assumptions about Ms. Maxwell based on her pregnancy and, later, about her ability to perform her work as a mother of two children" (Ct. Rec. 23 at 5). Stereotyping is direct evidence of sex discrimination. *Price Waterhouse*, 490 U.S. at 251.

In addition, Ms. Maxwell identifies two different adverse employment actions that she alleges were motivated by stereotyping and discrimination: (1) her

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

termination; and (2) VESi's denial of her previously negotiated schedule after the birth of her second child. (Ct. Rec. 23 at 5); (Ct. Rec. 53 at 15). Ms. Maxwell offers evidence to support the following facts: (1) she is a woman who was pregnant just prior to her termination; (2) she was doing satisfactory work; and (3) she was replaced with a male employee.

The Court finds that Ms. Maxwell has provided sufficient facts to support her prima facie case for gender and pregnancy discrimination. *See Kuest*, 111 Wash.App. at 43-44.

VESi has responded to Ms. Maxwell's prima facie showing of gender and pregnancy discrimination by articulating a nondiscriminatory reason for Ms. Maxwell's termination, namely that she developed a negative attitude that was impeding productivity in VESi's small office environment. VESi offered evidence of Mr. Chung's frustration with Ms. Maxwell's emails and alleged repeated telephone calls regarding VESi's rejection of her proposed schedule, Mr. Jackson's frustration with Ms. Maxwell's alleged delayed responses to his emails, and the co-workers' complaints that Ms. Maxwell's attitude was affecting the work environment. Dep. of Patrick Chung, Apr. 7, 2010 (Ct. Rec. 25-6 at 58, 61, 69); Dep. of Mick Jackson, Apr. 7, 2010 (Ct. Rec. 42-2 at 191).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    The Court finds that VESi has provided sufficient facts to support its proffered

2  nondiscriminatory reason for terminating Ms. Maxwell's employment.

3    The burden then shifts back to Ms. Maxwell to show that the proffered reason

4  is pretextual "either directly by persuading the [fact-finder] that a discriminatory

5  reason more likely motivated the employer or indirectly by showing that the

6  employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at

7  256, 101 S.Ct. 1089.

8    There is conflicting evidence in the record regarding whether Ms. Maxwell

9  exhibited a negative attitude during and/or after her pregnancy.  Mr. Chung stated

10  that he never experienced a negative interaction with Ms. Maxwell during her

11  pregnancy.  Dep. of Patrick Chung, Apr. 7, 2010 (Ct. Rec. 42-1 at 16).  Although Mr.

12  Chung recalls that he became frustrated with Ms. Maxwell's reaction to the

13  executives' decision to reject her flexible schedule proposal, he took no disciplinary

14  action regarding Ms. Maxwell's alleged insubordination before firing her and then

15  wrote her a recommendation letter shortly after her termination (Ct. Rec. 25-6 at 59-

16  60).  Ms. Maxwell was fired the same week that she returned to work full-time (Ct.

17  Rec. 25-6 at 62).  In addition, the record does not resolve whether the company

18  executives' rejection of Ms. Maxwell's requests for scheduling flexibility during her

19  pregnancy and her proposed schedule upon return to work from maternity leave were

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 22

1   departures from what they previously had agreed to when they hired her or have
2   allowed for other employees.
3           The parties also dispute whether the executives' actions were based on gender
4   stereotyping and, therefore, discriminatory.  VESi maintains that it justifiably
5   rejected Ms. Maxwell's proposed schedule because she had previously told Ms.
6
7   Jackson and Ms. Nash that her first child distracted her from work while at home,
8   and therefore, VESi may be justified in concluding that Ms. Maxwell would not be
9
10  efficient working at home with both a newborn and an older child.   However,
11  deposition testimony of VESi's executives demonstrate that there had been no
12
13  performance issues with Ms. Maxwell's pre-maternity leave schedule, which
14  included several hours per week of working at home.  *See* Dep. of Mick Jackson,
15
16  Apr. 7, 2010 (Ct. Rec. 38-3 at 20-22).
17          The record also is unclear as to whether the requested additional hours at home
18
19  overlapped with Ms. Maxwell's older child being at home, or whether he would have
20  been at daycare for part of that time.  *See* (Ct. Rec. 42-10 at 176) (email from Ms.
21
22  Maxwell explaining that her older child was at preschool from 8:30 a.m. until 5:00
23  p.m.).  The parties agree that there were no performance issues and that Ms. Maxwell
24
25  did her job well.  Rather, the Defendants assert that Ms. Maxwell was justifiably
26  fired for insubordination and a bad attitude that surfaced throughout her pregnancy,
27
28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 23

but mostly following the executives' rejection of her proposed work schedule, and affected the overall small office environment of the company.

The Court finds that each party has provided sufficient evidence to raise genuine issues of material fact as to whether Ms. Maxwell was terminated because of a negative attitude and insubordination or whether Ms. Maxwell was terminated because of VESi's discriminatory perception of Ms. Maxwell's abilities as a new mother to perform her work.  Therefore, the Court denies both parties' motions for summary judgment on Ms. Maxwell's WLAD claims.

## C.  Negligent and Intentional Infliction of Emotional Distress:

Ms. Maxwell must support her negligent infliction of emotional distress claim by showing that (1) the employer failed to act with reasonable care; (2) that the employer's acts exceeded acceptable employee discipline or the employer's reasonable response to a personality dispute; (3) the employer's negligent acts proximately caused injury to Ms. Maxwell; and (4) Ms. Maxwell's emotional distress is manifested by objective symptoms.  *Snyder v. Med. Serv. Corp.*, 145 Wn.2d 233, 252, 35 P.3d 1158.  An intentional infliction of emotional distress claim requires a showing on the following elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  *Kloepfel v. Bokor*, 149 Wn.D 192, 195, 66

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 24

P.3d 630 (2003).

The Defendant contends that Plaintiff's emotional distress claims are precluded as a matter of law because Plaintiff cannot recover twice for the same acts under a gender and pregnancy discrimination theory and under an emotional distress theory. *See Chea v. Men's Warehouse, Inc.*, 85 Wn. App. 405, 932 P.2d 1261 (1997) (holding that the plaintiff's recovery for both racial discrimination and emotional distress damages was permissible because the claims did not overlap because the emotional distress claim was based on non-racial comments during the incident at issue).

This Court is not granting summary judgment on Ms. Maxwell's discrimination claim. Therefore, the issue of double recovery is premature. The Court denies summary judgment dismissal of Ms. Maxwell's negligent and intentional infliction of emotional distress claims. Accordingly,

**IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (Ct. Rec. 22) is **DENIED.**

2.    Defendant's Motion for Summary Judgment (Ct. Rec. 27) is **GRANTED** with regard to Plaintiff's wrongful termination in violation of public policy claim and is **DENIED** with regard to Plaintiff's discrimination claim under Washington's Law Against Discrimination

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

and Plaintiff's negligent and intentional distress claims.

The District Court Executive is directed to enter this Order, enter judgment as outlined above, and provide copies to counsel.

**DATED** this 6th day of August, 2010.


_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
United States District Court Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26